1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

4  JOHN BEJARANO,                              )
                                              )
5          Petitioner,                        )       2:98-CV-1016-GMN-NJK
                                              )
6  vs.                                        )
                                              )       **ORDER**
7  RENEE BAKER, *et al.*,                     )
                                              )
8          Respondents.                       )
                                              )
9  _____/

10         The United States Court of Appeals for the Ninth Circuit has remanded this case for the

11  limited purpose of deciding two specific issues:

12              (1) Whether intervening law warrants reconsideration of Petitioner's appellate
           ineffective assistance of counsel (IAC) claims.  *See* District Court's September 26,
13         2008 Order at 15 (dismissing appellate IAC claims as untimely); *cf. Nguyen v. Curry*,
           736 F.3d 1287 (9th Cir. 2013) (extending the procedural default exception of *Martinez*
14         *v. Ryan*, 132 S.Ct. 1309 (2012), to appellate IAC claims defaulted by state
           post-conviction counsel).
15
              (2) Whether intervening law warrants reconsideration of Claim 2(A) (IAC at
16         sentencing).  *See* District Court's March 15, 2010 Order at 9 (ruling that 28 U.S.C. §
           2254(e)(2) precludes an evidentiary hearing on Claim 2(A)); *see also* District Court's
17         September 1, 2010 Order at 24 (section 2254(e)(2) bars consideration of much of
           Petitioner's proffered evidence); *cf. id*. at 24-28 (however, even if the jury had heard
18         the omitted evidence, there is no reasonable probability of a different sentence); *cf.*
           *Woods v. Sinclair,* 764 F.3d 1109, 1138 n.16 (9th Cir. 2014) (28 U.S.C. § 2254(e)(2)
19         does not categorically bar an evidentiary hearing on procedurally defaulted IAC
           claims); *see also Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc) (applying
20         the *Martinez* procedural default exception to IAC claims raised ineffectively in state
           court and later expanded in federal court).
21

22  ECF No. 176.

23  In furtherance of that mandate, each party has submitted briefing on these issues.  ECF Nos. 181 and

24  183.  Upon due consideration, the court decides as follows.

25         (1) *Whether intervening law warrants reconsideration of Petitioner's appellate IAC claims*.

26         In the September 26, 2008, order cited in the limited remand order, this court determined that

1   Petitioner's appellate IAC claims were untimely under 28 U.S.C. §2244(d) because they were filed

2   beyond the one-year statutory filing period and did not relate back to Petitioner's timely-filed initial

3   petition.  ECF No. 36, p. 15-16.  As noted in the remand order, the court of appeals has tasked this

4   court with assessing whether that decision was correct in light of the subsequent decision in *Nguyen*

5   *v. Curry*, 736 F.3d 1287 (9th Cir. 2013).  While the Ninth Circuit's explanatory parenthetical above

6   refers to the case's extension of the holding in *Martinez*, *Nguyen* also involved an issue regarding

7   whether the petitioner's appellate IAC claim related back to his timely-filed petition under *Mayle v.*

8   *Felix*, 545 U.S. 644 (2005).  *Nguyen*, 736 F.3d at 1297.

9       In *Nguyen*, the Ninth Circuit held that a claim alleging appellate counsel was ineffective for

10   failing to raise a double jeopardy argument on direct appeal related back to the petitioner's claim that

11   his rights were violated under the Double Jeopardy Clause, which in turn related back to the original

12   petition and therefore was not barred by the one-year limitation period. 736 F.3d at 1296–97.  The

13   court noted that the "time and type" language in *Felix* "refers not to the claims, or grounds for

14   relief," but "to the facts that support those grounds."  *Id*. at 1297.  The court found that the original

15   double jeopardy claim and the new claim alleging ineffective assistance of appellate counsel were

16   "supported by a common core" of facts that were "simple, straightforward, and uncontroverted," and

17   "clearly alleged in the original pleading."  *Id*.

18       Applying the relation-back standard espoused in *Nguyen* to this case,[1] this court finds that

19   some, but not all, of  Petitioner's ineffective assistance of appellate counsel claims arguably relate

20   back to the timely-filed petition.  With respect to those claims, the Nevada Supreme Court rejected

21

---

22   [1]   *Nguyen* conflicts, to some extent, with *Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012).  In

23   *Schneider*, the court held that a due process claim based on the trial court's denial of petitioner's motion
    to sever did not relate back to a claim in his original petition that trial counsel provided ineffective

24   assistance by failing to investigate his co-defendant's trial strategy and failing to file a timely motion to
    sever. *Schneider*, 674 F.3d at 1151.  The court determined that the relation-back doctrine did not apply:

25   "Schneider's original theory was based on trial counsel's alleged failures," while "[h]is amended theory
    is based on the trial court's alleged errors," thus "[t]he core facts underlying the second theory are

26   different in type from the core facts underlying the first theory."  *Id*.  Despite the apparent conflict, the
    limited remand order directs this court to apply *Nguyen*.

1  them on the merits and relief must be denied under 28 U.S.C. § 2254(d).

2        Petitioner's ineffective assistance of appellate counsel claims are set forth under Claim Five

3  in his petition. ECF No. 106, p. 153-56. In Claim Five(A), Petitioner claims that his counsel on

4  direct appeal was subject to a conflict of interest that adversely affected her representation.

5  Petitioner's initial petition contains no reference to this alleged conflict. ECF No. 5. Thus, even

6  under *Nguyen*, the claim does not relate back.

7        In Claim Five(B), Petitioner claims that his counsel on direct appeal was ineffective for

8  failing to challenge the trial court's decision to remove potential juror, Daniel Mahe,[2] for cause

9  because he expressed reservations about the imposition of the death penalty. In his initial petition,

10  Petitioner raised an ineffective assistance of trial counsel claim premised on counsel's failure to

11  object to the juror's excusal. *Id.*, p. 9-10. He also raised a substantive claim based on the trial

12  court's alleged exclusion of "a number of prospective jurors . . . for cause" because they "did not

13  express an intention to automatically vote for the death penalty on a murder conviction." *Id.*, p. 49.

14        Assuming Claim Five(B) relates back to the initial petition under *Nguyen*, the claim is not

15  procedurally defaulted. Petitioner raised the claim in his second state post-conviction proceeding.

16  ECF No. 15, Ex. M, p. 62-63, 232; ECF No. 16, Ex. U, p. 30-31. In that proceeding, the Nevada

17  Supreme Court determined that many of the petitioner's claims were procedurally barred, but held as

18  follows:

19              One of Bejarano's claims during his second post-conviction proceeding was
              that his direct appeal counsel was ineffective. This court has considered this claim
20              and has determined that it is without merit.

21  *Bejarano v. Warden*, 929 P.2d 922, 926 n.2 (Nev. 1996).

22        Because Claim Five(B) was adjudicated on the merits rather than procedurally defaulted, the

23  question becomes whether the provisions of the Antiterrorism and Effective Death Penalty Act

24  (AEDPA) limit this court's ability to grant habeas relief with respect to the claim. *See Lindh v.*

25

26  _____
[2] Bejarano's habeas petition and the state court record filed herein interchange "Daniel" and "Terry" for
the first name of this potential juror.

3

*Murphy*, 521 U.S. 320, 333 n.7 (1997) (noting "highly deferential standard for evaluating state court rulings" imposed by 28 U.S.C. § 2254(d)).  Claims of ineffective assistance of appellate counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  The federal court must defer to the state court's rejection of Petitioner's appellate IAC claim unless it "involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In *Witherspoon v. Illinois*, 391 U.S. 510 (1968), the Supreme Court held that, when selecting a jury in a capital case, jurors cannot be struck for cause "because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon*, 391 U.S. at 522 & n. 21.  The Court clarified *Witherspoon* in *Wainwright v. Witt*, 469 U.S. 412 (1985), where it held that a prospective juror may be excused for cause if that juror's views on the death penalty "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *Witt*, 469 U.S. at 424 (additional citations omitted).  "[I]n determining whether the removal of a potential juror would vindicate the State's interest without violating the defendant's right, the trial court makes a judgment based in part on the demeanor of the juror, a judgment owed deference by reviewing courts ."  *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

Prior to being removed for cause, potential juror Mahe was questioned at length by the trial court, the prosecutor, and defense counsel.  ECF No. 14-4, p. 31-43.  At one point, the trial court stated, "[I]f there are cases in which you could vote for the death penalty, then you are a proper juror."  *Id*., p. 41.  Mahe responded:

> "Okay, right now, I am not sure I could vote for the death penalty, so I am probably not the right one.  That's all I can tell you."

*Id*.  Then, after defense counsel explained that he should be disqualified only if he was unable to decide in favor of the death penalty under any circumstances, Mahe stated, "I don't think I should be

4

here." *Id*., p. 42-43.  At that point, the trial court excused Mahe.  *Id*.

In his first state post-conviction proceeding, Petitioner claimed that trial counsel was ineffective in not challenging the trial court's dismissal of Mahe for cause.  ECF No. 14, Ex. E, p. 2-3.  In addressing that claim following an evidentiary hearing, the trial court found it "would have been frivolous for counsel to object to [Mahe's] excusal in light of the views [Mahe] expressed." *Id*., Ex. G, p. 4.

While perhaps not "frivolous," an objection from trial counsel would not have likely been fruitful given the trial court's lengthy voir dire of Mahe.  More to the point, the Nevada Supreme Court's determination that appellate counsel was not ineffective by failing to raise this issue on appeal was objectively reasonable and supported by a reasonable determination of the facts. *Cf. Gentry v. Sinclair*, 705 F.3d 884, 912 (9th Cir.2013) (requiring deference under § 2254(d) to the Washington Supreme Court's determination that the trial court "did not abuse its discretion" in excluding a juror who stated that he was capable of imposing the death penalty, but was "'more inclined' to find mercy as a mitigating factor and was not 'completely open' on the issue"). Consequently, Claim Five(B) fails on the merits even if it is timely and otherwise properly before this court.

In Claim Five(C), Petitioner claims that his counsel on direct appeal was ineffective for failing to raise the issues contained throughout his federal petition.  In his brief filed with this court in relation to the limited remand, Petitioner identifies four issues (in addition to the issue in Claim Five(B)) that effective direct appeal counsel would have raised: (1) a Confrontation Clause violation due to the admission of the testimony of Joseph Morton at Petitioner's preliminary hearing, (2) a violation of the trial court's order precluding the admission of Robert Kindell's penalty hearing testimony regarding a murder for hire offense, (3) the submission of invalid aggravating circumstances to the jury, and (4) the prejudice that resulted from an *ex parte* hearing that occurred after the guilt phase of the trial wherein the trial court questioned Petitioner about trial counsel's effectiveness in preparing for trial.  ECF No. 181, p. 32-39.

The core of operative facts underlying the first two issues are not included in any claim in Petitioner's initial petition.[3]  Thus, here again, even under the *Nguyen* standard, an ineffective assistance of counsel claim based on appellate counsel's failure to raise either issue does not relate back to the initial petition and is, therefore, untimely.

Petitioner's initial petition contains claims that challenge the aggravating circumstances presented to and/or found by the jury – specifically, that the murder was committed during the commission of a robbery, that the murder was committed for the purpose of receiving money, and that the murder was committed to avoid a lawful arrest.  ECF No. 5, p. 53-57, 59-61.  Thus, under *Nguyen*, petitioner's appellate IAC claims based on counsel's failure to raise those issues on appeal relates back to that petition.[4]  In addition, Petitioner raised these claims in his second state post-conviction proceeding (ECF No. 15, Ex. M, p. 64-66, 232; ECF No. 16, Ex. U, p. 30-31) and they were ruled upon on the merits by the Nevada Supreme Court (*Bejarano*, 929 P.2d at 926 n.2).

The first two factors – i.e., the robbery felony aggravator and the receiving-money aggravator – were invalidated in Petitioner's third state post-conviction proceeding, but the Nevada Supreme Court concluded that it was "clear beyond a reasonable doubt that absent the invalid aggravators the jury still would have imposed a sentence of death."  *Bejarano v. State*, 146 P.3d 265, 275-76 (Nev. 2006).  Thus, the Nevada Supreme Court reasonably found that the error was harmless beyond a reasonable doubt as required by *Clemons v. Mississippi*, 494 U.S. 738, 753 (1990).  *Id.*  This court agreed that "nothing in the trial court record suggests that the invalid aggravating circumstances could have had more than a minimal impact on the jury's decision to impose the death penalty."  ECF No. 162, p. 13.  Accordingly, the Nevada Supreme Court's determination that appellate counsel

---

[3] Ground Eight of the initial petition makes a vague allegation regarding the prosecutor committing misconduct in calling Morton as a witness at trial, but makes no mention of the admission of his preliminary hearing testimony.  ECF No. 5, p. 16.  The initial petition makes no reference whatsoever to Kindell's penalty phase testimony.

[4] Any appellate IAC claims based on counsel's failure to raise any other issue regarding the validity of the aggravating circumstances found in Petitioner's case do not relate back to the initial petition and, therefore, are untimely.

1    was not ineffective in failing to challenge these factors was objectively reasonable and supported by

2    a reasonable determination of the facts.  The claim fails on the merits under § 2254(d).

3        With respect to the avoid or prevent lawful arrest aggravating circumstance, Petitioner argues

4    that the factor is unconstitutional "as applied" in his case because its lack of meaning or proof

5    requirements renders it inadequate "to fulfill the narrowing function required by the Eighth and

6    Fourteenth Amendments."  ECF No. 181, p. 36 (citing *Godfrey v. Georgia*, 446 U.S. 420, 428-26

7    (1980)).  To be constitutional, an aggravating circumstance must "not apply to every defendant

8    convicted of a murder; it must apply only to a subclass of defendants convicted of murder."

9    *Tuilaepa v. California*, 512 U.S. 967, 972 (1994).  As explained in *Tuilaepa*, however, an

10   aggravating factor withstands a constitutional challenge if it has some "common sense core of

11   meaning . . . that criminal juries should be capable of understanding."  *Tuilaepa*, 512 U.S. 967,

12   973–74 (1994) (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976)).

13       The "core meaning" of the factor at issue is readily understandable.  In addition, the statutory

14   language defining the circumstance is specific enough to avoid arbitrary and capricious imposition of

15   the death penalty and sufficiently narrows the class to defendants to which it applies.  *See*

16   *Wainwright v. Lockhart*, 80 F.3d 1226, 1231 (8th Cir. 1996) (upholding the validity of an Arkansas

17   statute that the killing was committed for the purpose of avoiding or preventing an arrest or effecting

18   an escape from custody); *Davis v. Executive Director of Dept. of Corrections*, 100 F.3d 750, 769

19   (10th Cir. 1996) (holding that Colorado's "avoiding or preventing lawful arrest or prosecution"

20   sufficiently narrows the class of persons eligible for the death penalty "by putting the focus on the

21   purpose of the murder.").

22       Moreover, even if appellate counsel had convinced the Nevada Supreme Court on direct

23   appeal that the factor was constitutionally deficient, there is not a reasonable probability that the

24   court would have set aside Petitioner's sentence.  The jury found three other aggravating factors

25   against the Petitioner:  two based on felony convictions involving the use or threat of violence (two

26   separate convictions for aggravated assault in Idaho) and one based on the fact that Petitioner was on

1   probation (from a 1985 misdemeanor conviction in Idaho for battery on a police officer) when he

2   committed the murder.  In addressing whether the jury still would have imposed the death sentence

3   absent the robbery felony aggravator and the receiving-money aggravator, the Nevada Supreme

4   Court noted that "numerous witnesses" testified about Bejarano's propensity for violence, which

5   included threats that "he would kill again if given the opportunity," and recounted Bejarano's own

6   testimony, which the court found to be the "most damning testimony during the penalty hearing."

7   *Bejarano*, 146 P.3d at 276-77.  The court summarized its conclusions as follows:

8           The murder of Roland Wright was senseless, and Bejarano's own testimony
        during the penalty hearing was defiant and unremorseful.  He not only had a
9       significant criminal history, he repeatedly threatened to commit future acts of
        violence and kill others.  It is clear beyond a reasonable doubt that absent the invalid
10      aggravators the jury would have still sentenced Bejarano to death.  Bejarano is
        therefore not entitled to any post-conviction relief.

11

12   *Id*. at 277.

13          Thus, in upholding the death sentence, the Nevada Supreme Court focused almost entirely on

14   Petitioner's violent nature and lack of remorse.  While the avoid or prevent lawful arrest aggravating

15   factor was not invalidated in that proceeding, the court did not assign it significant weight.

16   Accordingly, it is not reasonably likely that the court would have disturbed Petitioner's sentence

17   after removing that factor, which means that Petitioner did not suffer *Strickland*-type prejudice based

18   on appellate counsel's failure to challenge it.

19          Lastly, Petitioner's initial petition also contains a claim based on the *ex parte* hearing that

20   occurred after guilt phase of the trial.  ECF No. 5, p. 50-51.  So, under *Nguyen*, petitioner's appellate

21   IAC claim based on counsel's failure to raise that issue on appeal relates back to that petition.  In

22   addition, Petitioner raised this claim in his second state post-conviction proceeding (ECF No. 15, Ex.

23   M, p. 63, 232; ECF No. 16, Ex. U, p. 30-31) and it was ruled upon on the merits by the Nevada

24   Supreme Court (*Bejarano*, 929 P.2d at 926 n.2).

25          Petitioner argues that this hearing created a conflict of interest that adversely affected

26   counsel's performance in the penalty phase of the trial.  ECF No. 181, p. 38-39.  However, there is

1  not a reasonable probability that this issue would have been successful on direct appeal because, as

2  explained by this court in Petitioner's claim challenging the effectiveness of counsel in the penalty

3  phase, the alleged conflict is entirely theoretical.  ECF No. 162, p. 15-16 (citing *Mickens v. Taylor*,

4  535 U.S. 162, 171 (2002) ("[A]n actual conflict of interest [means] precisely a conflict that *affected*

5  *counsel's performance*--as opposed to a mere theoretical division of loyalties.").  Thus, this appellate

6  IAC claim also fails on the merits under § 2254(d) because the Nevada Supreme Court's

7  determination was objectively reasonable and supported by a reasonable determination of the facts.

8         (2) *Whether intervening law warrants reconsideration of Claim 2(A) (IAC at sentencing).*

9        As noted in the limited remand order, this court determined that 28 U.S.C. § 2254(e)(2)

10  precluded this court from granting Petitioner an evidentiary hearing with respect to his claim that he

11  received ineffective assistance of counsel at sentencing (Claim 2(A)).  ECF No. 157, p. 9.  The court

12  also concluded, relying on *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005), that that

13  determination meant that the court was not permitted to consider much of Petitioner's proffered

14  evidence in adjudicating the claim on the merits.  On remand, this court has been asked to determine

15  whether holdings in *Woods v. Sinclair,* 764 F.3d 1109 (9th Cir. 2014) and *Dickens v. Ryan*, 740 F.3d

16  1302 (9th Cir. 2014) (en banc), require reconsideration of those determinations.

17        This court's judgment against Petitioner was entered prior to the Supreme Court's decision in

18  *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), which held that ineffectiveness of counsel in failing to

19  raise, in a state court initial-review collateral proceeding, a claim of ineffective assistance of counsel

20  ("IAC") at trial can be "cause" to excuse a state-court procedural default.  *Martinez*, 132 S.Ct at

21  1318.  Both *Woods* and *Dickens* involve the application of *Martinez* to procedurally defaulted IAC

22  claims.

23        In *Dickens*, the district court concluded, with respect to petitioner's federal court claim of

24  ineffective assistance of counsel during sentencing, "that Dickens's new allegations and proffered

25  evidence fundamentally altered his previously exhausted IAC claim."  *Dickens*, 740 F.3d at 1317.

26  Because the claim was still unexhausted, the court of appeals determined that "the district court

9

1   correctly determined that Dickens's newly enhanced *Strickland* claim [was] procedurally barred." *Id*.

2   at 1319.  The Ninth Circuit held that: (1) the *Pinholster* limitation[5] did not apply to the procedurally

3   defaulted ineffective assistance claim because it was not previously adjudicated on the merits by the

4   state courts; and (2) 28 U.S.C. § 2254(e)(2) does not bar an evidentiary hearing for petitioner to

5   show cause and prejudice under *Martinez* because petitioner was not asserting a constitutional

6   "claim" for relief.  *Dickens*, 740 F.3d at 1320-21.

7         The relevant holding in *Woods* also involved IAC claims that had not been presented to the

8   state court at all, but were procedurally defaulted.  *Woods*, 764 F.3d at 1136-37.  In remanding the

9   case to the district court to conduct a *Martinez* analysis – i.e., to determine "whether [petitioner's]

10   IAC claims are substantial and whether PCR counsel was ineffective for failing to raise them," the

11   court added the following footnote:

12         We leave for the district court to resolve whether an evidentiary hearing
         should be held in connection with Woods's *Martinez* claims.  To the extent that
13         the State argues that *Pinholster* and § 2254(e)(2) categorically bar Woods from obtaining
         such a hearing or from presenting extra-record evidence to establish cause and
14         prejudice for the procedural default, we reject this argument. *See Dickens*, 740 F.3d at
         1320–22; *Detrich* [*v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2012)].

15

16   *Woods*, 764 F.3d at 1138 n. 16.

17         Unlike in *Dickens* and *Woods*, the relevant IAC claim in this case is not procedurally

18   defaulted in federal court.   Instead, this court concluded that it was not procedurally barred from

19   reviewing Claim 2(A) because Petitioner had previously presented the claim to the state courts in his

20   second state post- conviction proceeding.  ECF No. 136, p. 29.  Because the claim was not

21   adjudicated on the merits in that state proceeding (or any state proceeding), this court was not

22   constrained by § 2254(d) and, therefore, reviewed the merits of the claim *de novo*.  *See Chaker v.*

23   *Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005).  As such, the references to *Pinholster* in *Dickens* and

24   *Woods* are inapplicable here inasmuch as the evidentiary restriction imposed by that case is grounded

25

26   [5]  Under *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), the Supreme Court held that, under 28 U.S.C.  §
     2254(d), the federal court's consideration of evidence in support of a claim is limited to evidence that
     was before the state court that adjudicated the claim on the merits.  131 S.Ct at 1398.

1   in § 2254(d) and would not apply in this case anyway.

2        With respect to § 2254(e)(2), the court in *Dickens* found the statute's restriction on

3   evidentiary hearings inapplicable because the purpose of the evidentiary hearing in that case was not

4   to support a substantive constitutional claim, but instead to determine whether the petitioner was

5   entitled to equitable relief under *Martinez*. *Dickens*, 740 F.3d at 1320-21. *Accord Detrich*, 740 F.3d

6   at 1247. In this case the court determined that § 2254(e)(2) precluded an evidentiary hearing with

7   respect to Petitioner's claim that he received ineffective assistance of counsel at sentencing, which is

8   unquestionably a substantive constitutional claim. And, even though there was no state court

9   adjudication on the merits with respect to Claim 2(A), the provisions of 28 U.S.C. § 2254(e) still

10  apply. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

11       This court rejects the notion that, for the purposes of *Martinez*, there is no distinction

12  between an instance in which post-conviction counsel is ineffective for failing to raise an IAC claim

13  and one in which post-conviction counsel is ineffective in failing to develop evidence in support of

14  an IAC claim. Language in *Detrich* explicitly limits *Martinez* to the former. *Detrich*, 740 F.3d at

15  1246 ("*Martinez* does not apply to claims that were not procedurally defaulted, but were, rather,

16  adjudicated on the merits in state court."). And, as noted in *Dickens*, "[s]ection 2254(e)(2) severely

17  restricts a petitioner's ability to obtain a hearing on a claim for relief where the petitioner 'failed to

18  develop the factual basis of a claim in State court proceedings' due to 'a lack of diligence, or some

19  greater fault, attributable to the prisoner or the prisoner's counsel;'" and, "[a] petitioner's attorney's

20  'fault' is generally attributed to the petitioner for purposes of § 2254(e)(2)'s diligence requirement."

21  *Dickens*, 740 F.3d at 1321 (citing *Williams v. Taylor*, 529 U.S. 420, 437–40 (2000)) (additional cited

22  source omitted).

23       Moreover, Petitioner makes no argument that Claim 2(A) was not, like the relevant claims in

24  *Dickens* and *Woods*, ever presented to the state court. Indeed, in opposing respondents' motion to

25  dismiss, Petitioner argued at length that the claim was exhausted via presentation to the Nevada

26  courts. ECF No. 122, p. 5-9.

1    Finally, in denying Claim 2(A) on the merits, this court considered all of Petitioner's

2  proffered evidence in support of the claim and nonetheless concluded that Petitioner was not entitled

3  to habeas relief.  ECF No. 162, p. 13-28.  Thus, even if intervening law means that this court's

4  restriction on evidence in support of Claim Two(A) was erroneous, the court's disposition of the

5  claim would remained unchanged.

6    Based on the foregoing, this court concludes that intervening law does not warrant

7  reconsideration of either (1) Petitioner's appellate ineffective assistance of counsel claims or

8  (2) Claim 2(A) (ineffective assistance of counsel at sentencing).

9    **IT IS SO ORDERED.**

10    **DATED** this 2nd day of July, 2015.

13  _____
    Gloria M. Navarro, Chief Judge
14  United States District Court

12